The Honorable Steve Bell State Senator Post Office Box 4282 Batesville, AR 72503
Dear Senator Bell:
This is in response to your request for an opinion on several questions involving a mayor's eligibility for retirement benefits. You note that the questions relate to the mayor of a city of the first class with a mayor/council form of government. The mayor was elected in May of 1981 and is currently in office. He previously served the city as an elected alderman for a period of eight years. He was born in May of 1936. It is also my understanding that these questions relate to the City of Batesville, which has not adopted a tax-supported pension and relief fund for non-uniformed employees (A.C.A. 24-12-101, et seq.). Nor, as I understand it, has the city elected to become a participating public employer under the Arkansas Public Employees Retirement System (A.C.A. 24-4-303).
Your specific questions are as follows:
 1. As of August 1, 1989, has this person met the eligibility requirements for retirement benefits based on length of service?
2. Is payment of retirement benefits mandatory for the city?
 3. Should the person leave office, would he still be eligible for benefits even if there were changes in the law after this person leaves office?
4. At what point in time will benefits start?
 5. Is it necessary to make note [on] the official records of the city that the person has met the criteria for length of service to establish retirement eligibility?
Based upon the above set of facts, it appears that the pertinent code provisions are found at A.C.A. 24-12-123 (Supp. 1987). This section states in part as follows:
 (a)(1) In all cities of the first class in this state, any person who shall serve as mayor of the city for a period of not less than ten (10) years, upon reaching age sixty (60) years, or any person who shall serve as mayor of the city for a period of not less than twenty (20) years, without regard to age, shall be entitled to retire at an annual retirement benefit during the remainder of his natural life, payable at the rate of one-half (1/2) of the salary payable to the mayor at the time of his retirement.
 (2) The retirement payments shall be paid monthly and shall be paid from the city general fund.
 (3) However, mayors who have served as an alderman or city employee prior to or after their service as mayor shall count their service as alderman or city employee at the rate of one (1) year for mayor's retirement for each two (2) years served as an alderman or a city employee, with a maximum of an additional two (2) years' credit towards mayor's retirement.
Although it appears that the mayor has met the ten (10) years service requirement in this instance, by virtue of his prior service as alderman (See 24-12-123(a)(3), supra), he has not yet reached the age of sixty (60). Thus, in response to your first question, the mayor has met the eligibility requirements pertaining to length of service. He is not yet entitled to retire under this Code section, however, because he has not reached the eligible age.
It is my opinion, in response to your second question, that the payment of benefits is mandatory as to those persons who have met the eligibility requirements under 24-12-123 (Supp. 1987).
With regard to the third question, it should be initially noted that vested rights in a retirement system cannot be adversely affected by legislation which is passed subsequent to the member vesting in that system. See Jones v. Cheney, 253 Ark. 926,489 S.W.2d 784 (1973); Pyle v. Webb, 253 Ark. 940, 489 S.W.2d 796
(1973); Attorney General Opinion No. 84-152. It must also be recognized, however, that this rule generally applies to rights which have vested in a retirement system by virtue of contractual obligations. The Arkansas Supreme Court has therefore embraced this "vested rights" rule in connection with retirement pay under a system based on voluntary employee contributions. Jones v. Cheney, supra. The theory is that such retirement pay represents delayed compensation for services rendered in the past due under a contractual obligation. 253 Ark. at 930. Article 2, 17 of the Arkansas Constitution prohibits the passage, inter alia, of laws impairing the obligation of contracts. The United States Constitution, Article 1, 10, contains a similar prohibition.
This theory would not appear to be applicable in this instance, however, since the statutory scheme under which the mayor may retire involves the city's compulsory payment of benefits, with no required employee contributions. This retirement pay would in all likelihood be deemed by a court to constitute a "gratuitous allowance" in which the pensioner has no vested rights. Jones v. Cheney, 253 Ark. at 930. Such a "mere gratuity" would ordinarily be subject to modification or repeal by subsequent changes in the law. Id., citations omitted. The constitutional provisions against impairing the obligation of a contract are not implicated in that instance. As stated by the Arkansas Supreme Court, quoting from an American Law Reports annotation "'(T)he "no vested rights" rule has been held to apply only to statutory pension systems which either do not require employee contributions, or require such contributions on a compulsory basis.'" 253 Ark. at 938, citing 52 A.L.R.2d 467.
The mayor's eligibility for retirement benefits in this instance may, therefore, be affected by changes in state law after he leaves office.* ___________. * Any attempted changes by CITY ORDINANCE would, in all likelihood, fail as being contrary to state law if the city has no established retirement system for members of the city's governing body prior to July 3, 1989. Act 309 [308] of 1989 states: "No first class city . . . shall hereafter establish any retirement benefit system or plan for members of the governing body of the city," except first class cities with a system or plan in effect prior to Act 309's [308's] effective date (July 3, 1989). Any attempt of the city to change the current state law retirement provisions would, it seems, of necessity initially involve the establishment of a retirement system in this instance and thus be contrary to state law. ___________.
The answer to your fourth question will, it seems, depend upon the law in place with the eligibility requirements are met. If the law does not change, it may be concluded that the mayor's benefits will commence when he reaches age sixty (60), that is, 1996. This also assumes, however, that there are no other provisions applicable at that point which would require the suspension of such benefits. See, e.g., A.C.A. 24-2-101 (requiring the suspension of retirement benefits earned from an elective position during the time the retired public officer holds any subsequent elective office, except alderman or justice of the peace).
In response to your final question, Section 24-12-123 (Supp. 1987) reflects no requirement in this regard, nor are we aware of any other Code provisions establishing such a requirement.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.